## Appeal of the Harrisburg National Bank.

Where a fund is deposited in bank to the joint credit of a resident administrator of a decedent and a foreign guardian of the minor children of said decedent, the Orphans' Court has no jurisdiction to determine the ownership of the fund in a proceeding to which the foreign guardian is not a party, although he has notice of the same.

May 23d 1877.   Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Appeal from the Orphans' Court of *Dauphin county*: Of May Term 1877, No. 201.

Appeal of the Harrisburg National Bank from the decree of the court confirming the report of the auditor appointed to take testimony and report upon exceptions to the account of A. O. Hiester, administrator of Dr. R. Ross Roberts, deceased, which exceptions alleged that said administrator had failed to collect and charge himself with the amount of a policy of insurance upon the life of the decedent.

The facts were these :—

In February 1870, Dr. Roberts effected an insurance upon his life in the sum of $10,000, in the Manhattan Life Insurance Com pany of New York.   The insurance was to be paid to his executors, administrators or assigns, within ninety days of the notice and satisfactory evidence of his death.   On the 9th day of May 1871, Dr. Roberts assigned this policy to Messrs. Dougherty Bros. & Co., bankers, as collateral security for certain loans then made and to be made to him.   Although the assignment was upon its face an absolute one, transferring to the assignees the title to the whole sum secured by the policy, the testimony of D. W. Seiler, a member of the banking firm, showed that it was designed by both parties simply as collateral security for advances theretofore made and to be made in the future to the decedent.   Notice of the assignment was given by the assignee to the insurance company on the 17th of May 1871, and accepted by the company.   Dr. Roberts died in April 1875, and about the 17th of the following August, Messrs. Dougherty Bros & Co., received from the insurance company the sum of $9339.33, which was the amount due on the policy, after deducting certain unpaid premium notes.   The amount due to the banking firm by Dr. Roberts, at the time of his death, and for which they held the policy as collateral, was $2087.55, which being retained by them, left in their hands a balance of $7251.78, which constitutes the fund in dispute in this case, the administrator having failed to charge himself with it as so much of the assets of the estate.

Some time after the death of Dr. Roberts, his father-in-law, the Hon. Samuel A. Foot, of Geneva, New York, was appointed by the Surrogate Court of Ontario county, in that state, guardian of decedent's minor children, they having before that time become

residents of that county, where they still reside.   In August 1875, the administrator, with his counsel, called at the banking house of Messrs. Dougherty Bros. & Co., to inquire about the life insurance policy, and were shown the assignment already referred to.   At that time the assignees declined to say what they would do with the balance which remained in their hands, after paying their advancements, but said they would consult their counsel and let the administrator know their decision.   In September following Judge Foot, the guardian, came on to Harrisburg, and seems to have claimed the fund from the assignees, for Judge Hiester testifies that he told him he had seen the Messrs. Dougherty Bros. & Co., and they had promised to pay him over the whole of the money if he would give them an indemnity.   This being the position of affairs, the following agreement was entered into.

" We, the subscribers, have this day deposited, to our joint credit in The Harrisburg National Bank, the sum of $7251.78, which we have agreed on compromise, ought, in our opinion, to be equally divided between us, as representatives of the creditors and children of R. Ross Roberts, deceased; and that we will ask Judge Pearson for an order approving such compromise and division, or such other division thereof as he with a full knowledge of the facts shall deem just.   But in case he declines approving such compromise and division, or any other division thereof, that he shall then decide to which of the parties hereto the whole sum belongs; it being the fund arising from a policy of insurance upon the life of R. Ross Roberts, deceased, and assigned by him absolutely to Dougherty Bros. & Co., and which they claimed the right, under the assignment, of transferring to the children of R. Ross Roberts, deceased, and if they have the right to make such transfer, it shall be deemed to have been made."

This agreement was signed by the administrator and Judge Foot, a joint receipt and release given to them by the Messrs. Dougherty Bros. & Co., and the money paid over to them and deposited to their joint order in The Harrisburg National Bank, where it still remains.   On the 8th of September 1875, a petition was signed by the administrator and the guardian, and presented to the Hon. John J. Pearson, President Judge, with a view of having him act upon the agreement already made, approve the compromise, if he deemed it legal, and if not, to decide to whom the fund belonged. Judge Pearson declined to accept the position of arbitrator between the parties.   Subsequently a petition was presented to the Court of Common Pleas of Dauphin county, sitting in equity, and after hearing, dismissed by the court on the ground that they had no jurisdiction.   On an appeal taken by the guardian, the Supreme Court affirmed the decision of the court below.

The administrator then filed his account but did not charge himself with the fund in bank.   He however called the attention

of the court to the sum and asked them to determine whether it belonged to the administrator or the guardian of the minor children.

Exceptions were filed to this account by certain creditors of the decedent when it was referred to an auditor. The notice sent by the auditor to Judge Foot was returned by the latter with an endorsement thereon that he refused to receive or recognise it in any way.

The auditor reported that the said sum of $7251.78 was a part of decedent's estate, belonged to his creditors, and should have been paid over to the administrator, he having no right to agree that any portion of it should be paid to the guardian until all the debts due by his decedent should be discharged.

He accordingly recommended that a decree be made by the court surcharging the administrator with the amount of said balance or sum of $7251.78, without interest, and that the Harrisburg National Bank be ordered to pay the said sum into the Orphans' Court, to be distributed by the court among the parties entitled thereto.

The bank excepted to this report on the ground that the court had no jurisdiction over said moneys sufficient to protect the bank from suits and demands by the depositors in case it should pay over said moneys.

The court, Pearson, P. J., overruled the exceptions, confirmed the report and made a decree adjudging the fund to belong to the administrator and making this further order:—

"That the Harrisburg National Bank pay the said money so deposited as aforesaid into this court, and that upon such payment the said bank be discharged from all further liability to Samuel A. Foot, guardian, or to any other claimant of the same or any part thereof; and further order and decree that, upon payment of said money into court, the same be paid over to the said administrator for distribution according to law."

From this decree this appeal was taken.

*Fleming & McCarrell*, for appellant.—Has the court jurisdiction to require the bank to pay into court money deposited by and in the name of another party? or can it afford protection to the bank against said depositor, in case it pays over the money as commanded?

Judge Foot, the guardian of decedent's minor children, and one of the depositors of the fund, is, with his wards, a citizen of New York. The process of the state court will not run beyond our state limits. He has refused to accept or act under the notice alleged to have been sent him by the auditor. His claim upon this fund has never been heard. It is true that the auditor and the court, upon the testimony submitted *ex parte*, find and decree that the fund deposited came from such a source as to make it the property of the estate. But *non constat* that if the guardian had

[Appeal of the Harrisburg National Bank.]

been heard, or served with process from a court having jurisdiction over him, he might not have shown that the fund came from some other source.   Can this guardian, having an undoubted right, as a citizen of another state, to prosecute his claim in the courts of the United States, be bound and his rights concluded by the decree of a tribunal to which he has never submitted himself, whose process cannot reach him, and which has never even heard his claim ?

*Robert L. Muench*, for appellee.—Judge Foot had notice, and there is no question from whence the fund on deposit arises.   The bank is fully protected by the Act of 29th of March 1832, Pamph. L. 191, which provides that foreign guardians cannot interfere with the control of estates in this state without first giving security ; and if this act does not apply, his refusal to recognise the authority of the court would estop him.   In the distribution of decedents' estates the Orphans' Court has jurisdiction over all who have the custody of funds belonging thereto : Hammett's, Appeal, 2 Norris 392.

Mr. Justice SHARSWOOD delivered the opinion of the court, June 11th 1877.

The court below undoubtedly had jurisdiction to surcharge the administrator with the money on deposit in the Harrisburg National Bank, as part of the estate of R. Ross Roberts.   Whether it was right, under the circumstances, to do so, is a question which is not before us on this appeal, and upon which, therefore, no opinion is expressed.

But the decree below went much farther, and directed that " the Harrisburg National Bank pay the said money, so deposited as aforesaid, into this court, and that upon such payment the said bank be discharged from all further liability to Samuel A. Foot, guardian, or to any other claimant of the same or any part thereof; and further order and decree that, upon payment of said money into court, the same to be paid over to the said administrator for distribution according to law."   We are of opinion that in this part of the decree the court transcended their power.

It appears that the fund in question was the balance of an insurance on his own life, effected by the decedent and made payable to him, his executors, administrators or assigns.   He had assigned the policy, in his lifetime, to a firm, as collateral security for some indebtedness.   They had received the amount from the insurance company, and after paying their debt there remained in their hands the sum of $7251.78.   Claim was made to this balance by Samuel A. Foot, of Geneva, New York, who had been appointed by the Surrogate Court of Ontario county, in that state, guardian of decedent's minor children, they having before that time become residents of that county, where they still reside.   The adminis-

trator and guardian then joined in a receipt to the assignees, and deposited the amount in the Harrisburg National Bank to their joint credit. They made an agreement of compromise by which the money was to be divided between them, provided Judge Pearson would approve of such compromise, or such other division thereof as he, with a full knowledge of the facts, should deem just. Judge Pearson very properly declined to approve the compromise or act as referee. Thus the matter stood when the administrator filed his account in the court below. The agreement of compromise and reference having failed of effect, the appellants are liable to pay this money to whoever is in law entitled to receive it. It may be very clear that under the laws of Pennsylvania this fund belongs to the administrator. If so, it is simply a debt due to the estate. But what Act of Assembly has given the Orphans' Court jurisdiction to determine that question, and order the debtor to pay the administrator or to pay into court—an order, of course, to be enforced by attachment or execution? The foreign guardian could not be brought in as a party by a simple notice, and the rights of the minor children be concluded by a decree against him. As a foreign guardian he had no power in this state; but a guardian may hereafter be appointed here, who would have. What power then had the court to decree that upon payment into court the bank should "be discharged from all further liability to Samuel A. Foot, guardian, or to any other claimant of the same or any part thereof?" Even if the claimant of the fund had been a resident of Dauphin county, he could not have been made a party to this proceeding and his claim disposed of in this summary way. He would have had a right to a common-law action and to a trial by jury. On what grounds the claim is made on behalf of the minor children we do not know. It would be dangerous, without hearing their side, to come to the conclusion that it is without foundation. This insurance was effected in the Manhattan Life Insurance Company of the city of New York. Neither the policy, nor the charter of that company, nor the laws of the state of New York on the subject of life insurance, were produced, as far as appears, in the court below. It is very clear to us that, if a guardian properly appointed under the laws of this state should hereafter bring an action against the appellants and establish the right of the minor children to this money, this order and decree of the Orphans Court would be no bar to a recovery. It may be readily conceded, as the learned auditor below argued, that the Orphans' Court has all the power of a court of equity in regard to matters clearly within its jurisdiction. But the question recurs, was this a matter clearly within its jurisdiction? In the settlement of the administrator's account, they certainly could decide that this was an asset of the estate which the administrator ought to have collected, and if he had negligently lost it, could surcharge him with the amount. But surely they could not cite

the debtor and enter a decree or judgment against him. That would be to draw into that court the trial and determination of all claims by decedents' estates against third persons. It would hardly be pretended that, if the money had remained in the hands of the assignees who held the policy as a pledge, that such an order could have been made upon them. It is not perceived that the appellants stand in any other or worse position. They were in no sense parties to the proceeding in the court below. They did not, in answer to the notice they received from the auditor, appear before him. When notified of his finding against them they came in and excepted. This they had a right to do, to prevent an unwarrantable proceeding against them; but it did not involve them in a submission to the jurisdiction, for it was for the very purpose of taking exception to that jurisdiction.

So much of the decree of the Orphans' Court as declares that the sum of $7251.78, held on deposit by the appellants, is a part of the estate of the aforesaid decedent, and as such legally belongs and is payable only to the aforesaid administrator, and therefore the court do further order and decree that the Harrisburg National Bank pay the said money so deposited as aforesaid into this court, and that upon such payment the said bank be discharged from all further liability to Samuel A. Foot, guardian, or to any other claimant of the same or any part thereof; and further order and decree that upon payment of said money into court the same be paid over to the said administrator for distribution according to law—be and the same is hereby reversed, and that the costs of this appeal be paid by the appellee from the estate of the decedent.