Schauble Estate.

Argued May 25, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

152

R. M. *Orcutt*, in propria persona, trustee, appellant No. 73.

*Frank Quinn*, of *English, Quinn, Leemhuis & Tayntor*, with him *Marsh, Spaeder, Baur & Marsh*, for administrator, appellant No. 74.

*Elmer D. Loose*, with him *Henry C. Baur*, for appellees.

OPINION BY MR. JUSTICE HORACE STERN, June 30, 1944:

These are appeals from the imposition of a surcharge upon the administrator d. b. n. c. t. a. of a decedent's estate. From a maze of acrimonious family litigation and procedural complications there emerges ·a situation which, when all the factual underbrush has been cleared away, presents for solution no really difficult legal problem.

Decedent, Bertha Baur Schauble, died in 1936, leaving a will in which she gave a life interest in her residuary estate to her husband, with remainder to her surviving brothers and sisters and the children of predeceased brothers and sisters. Her husband, who was named as executor, died in 1939. Outside of a trivial amount of

personalty the estate consisted of two pieces of real estate, each encumbered by a mortgage and both subject to a judgment lien in favor of Violet Baur in the sum of $2,625, with interest on $2,500 thereof from January 10, 1932. On May 9, 1941, Violet Baur, who was admittedly insolvent, assigned this judgment to Marine National Bank of Erie, as collateral security for an indebtedness to it of about $2,500. Among her creditors were Alfred Baur and Thekla Baur Abbott, executrix of the Estate of Herbert N. Abbott, deceased, who held judgments against her totaling approximately $12,000; on September 12, 1941—charging that this assignment by Violet Baur to the bank was intended to create, and did create, a preference over her other creditors—they petitioned the Court of Common Pleas, in accordance with the Insolvency Act of June 4, 1901, P. L. 404, for the appointment of a receiver "to take charge of" her judgment against decedent's estate and all her other property "for the benefit of all creditors." Byron A. Baur, Esq., their attorney, then conducted negotiations for the adjustment of their interests and those of the bank, as creditors, in the Violet Baur judgment, with the result that a settlement was finally reached whereby they paid to the bank the sum of $500, in consideration of which it assigned the judgment to R. M. Orcutt, Esq., as their trustee, at the same time releasing Violet Baur from her liability; on March 2, 1942, in pursuance of this settlement, the proceedings were marked settled and discontinued as to the bank.

On January 8, 1942, Byron A. Baur, Esq., was appointed administrator d. b. n. c. t. a. of decedent's estate. Acting under the authority of a power of sale contained in the will he sold the two properties owned by the estate, the net proceeds of which, after payment of the mortgage encumbrances, amounted to $5,010.88. In order to clear the title by removing the lien of the Violet Baur judgment he paid to Orcutt as trustee out of the proceeds of one of the properties $1,634.17 and of the other $2,665.83, or a total of $4,300, which was the

amount due on the judgment, at the same time taking back, as administrator, a refunding bond from Alfred Baur and Thekla B. Abbott individually and as executrix, conditioned for the payment to him on demand of the sum of $5,000, to be used by him as security against any liability on his part because of the payments thus made to them prior to a final order of the court.

On May 10, 1943, the administrator filed an account showing the receipt of the proceeds from the real estate, the payment of the judgment to Orcutt, and all the other expenditures, there being nothing left for distribution to the residuary legatees and devisees. Exceptions to the payments made to Orcutt were filed by Henry C. Baur, Esq., who was a brother of decedent, on behalf of himself, another brother, and an executrix of the estate of a deceased brother. The court sustained these exceptions and surcharged the administrator in the sum of $3,868.02 (an obvious error for $3,800) being the difference between the $500 paid to the bank by Alfred Baur and Thekla B. Abbott, executrix, for the assignment of the judgment and the $4,300 given by the administrator to Orcutt to liquidate it. On demand of the administrator, made in pursuance of the refunding bond, Thekla B. Abbott, executrix, and Alfred Baur returned $3,800 to him, which he thereupon reported to the court as being in his custody as administrator "for distribution to whoever is finally adjudicated to be entitled to the same according to law". He also revived the receivership proceedings in the Court of Common Pleas which had been discontinued as to the bank but not as to Violet Baur, so that those proceedings are still pending and undetermined.

Two appeals from the decree of the court below have been taken to this court, one by the administrator from the imposition upon him of the surcharge, the other by Orcutt, trustee. As to the latter, it is obvious that Orcutt has no ground for appeal inasmuch as the decree did not purport to pass upon his rights as alleged owner

of the judgment, but left his claim open for future adjudication; he is not interested in the surcharge imposed upon the administrator.

As far as the appeal of the administrator is concerned, the decision of the court below cannot be sustained. It is based upon the theory, not that the Violet Baur judgment was other than a valid claim against decedent's estate which had to be paid to the parties entitled thereto before any distribution to residuary legatees and devisees, but that Byron A. Baur, Esq., at a time when he was acting as administrator and also as attorney for Alfred Baur and Thekla B. Abbott, executrix, in their proceedings against the bank, negotiated with the latter and obtained an assignment of the judgment to his clients for the sum of $500 instead of obtaining it for decedent's estate on the same terms, thereby compelling the estate ultimately to pay the full amount of the judgment and causing it an alleged loss of $3,800. Accordingly the court found that the administrator was guilty of a lack of good faith and fidelity in the management of the estate.

There is not a scintilla of evidence in the record to indicate that the administrator could, on behalf of the estate, have purchased the Violet Baur judgment from the bank for $500 or any other amount short of its face value. The contest between his clients and the bank was in regard to their respective rights in and to the judgment; as the assignment to the bank was made while Violet Baur was insolvent and the amount of the judgment was largely in excess of the debt for which it was given as collateral (see Uniform Fraudulent Conveyance Act of May 21, 1921, P. L. 1045, sec. 3(b)), there was some seeming justification for requesting the appointment of a receiver, and if a receiver had been appointed the bank in the end would probably not have been able to salvage more than $500 out of the judgment, since Alfred Baur and Thekla B. Abbott, executrix, were much larger creditors of Violet Baur and under

the provisions of the Insolvency Act the judgment would have inured *proportionally* to the benefit of all her creditors. Apparently realizing this, the bank surrendered, or agreed to pro-rate, its right, title and interest in and to the judgment on a basis of $500; it did not *sell* the judgment in the ordinary sense of the term. Counsel for the bank testified that, apart from this litigation, it would have made every effort to collect the judgment in full, nor would it have abated any of it to decedent's estate. Moreover, even had it been willing to sell the judgment to decedent's estate it could not have done so, because its title was subject to the rights of the plaintiffs in the receivership proceedings and of all the creditors of Violet Baur on behalf of whom that suit had been brought; any purchaser from the bank, having knowledge of those proceedings, would have been compelled, in order to acquire a complete and valid title, to negotiate also with the creditors for a release of their interests in the judgment as thus asserted by them. If the bank had not been conscious of the fact that it could not give a good title to the judgment it certainly would have demanded more than $500 for a sale thereof, since it was well aware that its value was considerably in excess of that amount.

While probably it would have been wiser for Byron A. Baur, Esq., not to have accepted the office of administrator at a time when he was already engaged in the litigation between Alfred Baur and Thekla B. Abbott, executrix, and the bank, it cannot be said that the dual role which he thereby assumed involved any real conflict of loyalties, for the estate had no defence to the Violet Baur judgment and, as already stated, the litigation between his clients and the bank was only in regard to a just apportionment of their respective rights to the judgment; the situation was not one in which decedent's estate, as debtor, had any interest, or in which it could have intervened for the purpose of attempting to liquidate the judgment for less than its face value.

As it admittedly owed the amount of the judgment it was not in any way harmed or prejudiced by the settlement made between the bank and Violet Baur's other creditors.

It is urged by appellees—the residuary legatees and devisees—that when the refund was made to the administrator and the Orcutt payments thereby restored to the estate the surcharge was complied with and therefore these appeals are moot. This suggestion indicates a misconception as to the purpose and nature of the surcharge, which was not imposed because the claim of these alleged creditors was paid prematurely and without an order of the court, but because it had to be paid in full. The court recognized that such payment would have to be made at the proper time and to the proper parties, but by the surcharge it intended that the administrator should be required to reimburse the estate to the extent of $3,800 because he was responsible, as the court believed, in the estate being obliged to pay $4,300 instead of $500 in liquidation of the judgment. The restoration of the $3,800 to the administrator merely complied with the obligation of the refunding bond; it was not to satisfy the surcharge but to replace the money, to the extent to which the payments made had been challenged, pending determination of the question as to the proper owner or owners of the judgment, which question was left open in the court's decree. Violet Baur insists that, since the bank held her judgment only as collateral security and accepted $500 in discharge of her liability, the value of the judgment in excess of that amount belongs to her. Whether her claim has any merit, or whether Orcutt as trustee for Alfred Baur and Thekla B. Abbott, executrix, is the sole present owner of the judgment, or whether other creditors, if any, of Violet Baur have an interest therein because of the provisions of the Insolvency Act (sections 1 and 2) that a preferential assignment by an insolvent shall inure to the benefit of all the creditors of such insolvent if proceedings in insolvency

be commenced within four months thereafter, are all questions which must be determined by the Court of Common Pleas in the receivership proceedings which have there been revived. The Orphans' Court must accept as conclusive any decree which may be rendered by that court concerning the ownership of the judgment and the person or persons therefore entitled to receive payment from decedent's estate: *McClain's Estate,* 180 Pa. 231, 36 A. 743; *Tourison's Estate,* 321 Pa. 299, 301, 184 A. 95, 96; *Commonwealth to use v. Easton Trust Co.,* 347 Pa. 162, 164, 32 A.2d 215, 216; see also *Walkinshaw Estate,* 275 Pa. 121, 126, 118 A. 766, 768. What we are now holding is that, after such payment shall have been made, the administrator shall not be obliged to pay into the estate from his own funds for the benefit of the residuary legatees and devisees the sum of $3,800 or any part thereof.

The appeal of Orcutt, trustee, is dismissed pro forma. The appeal of the administrator d. b. n. c. t. a. is sustained, the decree imposing a surcharge upon him is reversed, and the record is remitted for further proceedings in accordance with this opinion; costs to be paid out of the estate.